## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NICHOLAS GAROUFALIS,

        Plaintiff,                     Case No.:

                                        Hon.

COUNTY OF WAYNE, a Political
Subdivision of the State of Michigan;
WAYNE COUNTY SHERIFF RAPHAEL WASHINGTON;
WAYNE COUNTY SHERFF DEPUTIES JOHN DOES 1-5;
WELLPATH LLC f/k/a CORRECT CARE SOLUTIONS, LLC
DIONE WILSON, LPN; MARGARET BARDEN, Nurse Practitioner;
V. GRAHAM, RN; STACEY COLEMAN, LPN; MARY HUMES, RN;
LATAMYA MEADOWS, RN; MICHELE INEZ DIGGS, MA-LNA;
ANGELO N. PATSALIS, MD, all in their official and individual capacities,
jointly and severally,

        Defendants.

_____/

PAUL F. DOHERTY (P36579)
VEN R. JOHNSON (P39219)
**JOHNSON LAW, PLC**
Attorneys for Plaintiff
535 Griswold St., Suite 2600
Detroit, MI 48226
(313) 324.8300 F- (313) 324-8301
pdoherty@venjohnsonlaw.com
vjohnson@venjohnsonlaw.com

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

      Plaintiff, through undersigned counsel, states for his Complaint as follows:

1.  Plaintiff is a citizen of the State of Michigan and resides in Macomb County, Michigan.

2.  Defendant, County of Wayne ("Wayne County"), is a political subdivision of the State of Michigan organized to carry out governmental functions; one of those functions is to organize, operate, staff and supervise its detention center known as the Andrew Baird Detention Facility ("Jail").

3.  Defendant Sheriff Raphael Washington ("Washington") is the Sheriff of Wayne County and the policy maker (or successor), for the Wayne County Jail system and his office represents the ultimate repository of law enforcement power and policy making. Defendant Washington, or his predecessors, were acting within the scope of his/their employment and  state law and otherwise acting in their official capacity all matters stated herein.

4.  Defendant Washington, and/or his predecessors, had control of the Jail and formulated and oversaw policies, practices, regulations, protocols and customs to be carried out, including the providing of medical screening, observation and treatment for those held at the Jail, and had the authority for hiring, screening, training, supervising and disciplining of deputies, corrections officers and medical staff working at the Jail whether directly and/or through medical service contract providers, such as Defendant Wellpath.

5.  For all times relevant hereto, Wayne County Sheriff Deputies John Does 1-5 ("Deputies") were employed by Wayne County and/or the Wayne County Jail and were acting in those capacities for all acts and or omissions stated herein. Defendant Wayne County has refused to identify the Deputies by name who had contact with Plaintiff during his stay at the Jail commencing July 1, 2019 and continuing through July 5, 2019 ("subject stay"). Upon disclosure, Plaintiff will amend his Complaint to name them individually.

6.  Defendant Wellpath, LLC f/k/a Correct Care Solutions LLC ("Wellpath") represents that it is a healthcare services company that provides doctors, nurses, mental health providers and other clinical staff to detention facilities throughout the country, including the Jail. Defendant Wellpath was responsible for the health care treatment of Plaintiff while at the Jail during the subject stay.

7.  Upon information and belief, Defendant Dione Wilson, LPN ("Wilson")  is a citizen of the State of Michigan and, for all acts and/or omissions (whether reckless or deliberately indifferent) stated herein, was acting in the course and scope of her employment/agency with Defendant Wayne County and/or Defendant Wellpath. Defendant Wilson provided medical care to Plaintiff during the subject stay.

8.  Upon information, Defendant Margaret Barden, Nurse Practitioner ("Barden"), is a citizen of the State of Michigan and, for all acts and/or omissions (whether reckless or deliberately indifferent) stated herein, was acting in the course

3

and scope of her employment/agency with Defendant Wayne County and/or Defendant Wellpath. Defendant Barden provided medical care to Plaintiff during the subject stay.

9. Upon information, Defendant V. Graham, RN ("Graham"), is a citizen of the State of Michigan and, for all acts and/or omissions (whether reckless or deliberately indifferent) stated herein, was acting in the course and scope of her employment/agency with Defendant Wayne County and/or Defendant Wellpath. Defendant Graham provided medical care to Plaintiff during the subject stay.

10. Upon information, Defendant Stacey Coleman, LPN ("Coleman"), is a citizen of the State of Michigan and, for all acts and/or omissions (whether reckless or deliberately indifferent) stated herein, was acting in the course and scope of her employment/agency with Defendant Wayne County and/or Defendant Wellpath. Defendant Coleman provided medical care to Plaintiff during the subject stay.

11. Upon information, Defendant Mary Humes, RN ("Humes"), is a citizen of the State of Michigan and, for all acts and/or omissions (whether reckless or deliberately indifferent) stated herein, acting in the course and scope of her employment/agency with Defendant Wayne County and/or Defendant Wellpath. Defendant Humes provided medical care to Plaintiff during the subject stay.

12. Upon information, Defendant Latamya Meadows, RN ("Meadows"), is a citizen of the State of Michigan and, for all acts and/or omissions (whether reckless

4

or deliberately indifferent) stated herein, was acting in the course and scope of her employment/agency with Defendant Wayne County and/or Defendant Wellpath. Defendant Meadows provided medical care to Plaintiff during the subject stay.

13. Upon information, Defendant Michele Inez Diggs, MA-LNA ("Diggs"), is a citizen of the State of Michigan and, for all acts and/or omissions (whether reckless or deliberately indifferent) stated herein, was acting in the course and scope of her employment/agency with Defendant Wayne County and/or Defendant Wellpath. Defendant Diggs provided medical care to Plaintiff during the subject stay.

14. Upon information, Defendant Angelo N. Patsalis, MD ("Patsalis"), was an employee/agent of Wellpath, LLC and is a citizen of the State of Michigan and, for all acts and/or omissions (whether reckless or deliberately indifferent) stated herein, was acting in the course and scope of his employment/agency with Defendant Wayne County and/or Defendant Wellpath.  Defendant Patsalis provided medical care to Plaintiff during the subject stay.

15. For all times relevant hereto, all acts and/or omissions alleged against any/all defendants, and in some instances individually, were committed while each/all was/were acting within the scope of his/her/their employment either with Defendant Wayne County or Defendant Wellpath, as contract employees to Defendant Wayne County.

16. All defendants are hereby sued in their official and individual capacities.

17. When the events alleged in this Complaint occurred, none of the defendants were acting in furtherance of a legitimate governmental function and, thus, are not entitled to governmental immunity.

## Jurisdiction and Venue

18. Plaintiff reasserts all allegations set forth in paragraphs 1-17 as if fully set forth herein.

19. This Court has jurisdiction pursuant to 28 USC § 1331 because this action arises under the constitution and laws of the United States.

20. The claims stated herein present constitutional and statutory claims arising under 42 USC § 1983, the Fourth, Eighth and Fourteenth Amendments and Michigan law.

21. Pursuant to 42 USC § 1983 and other applicable laws, Plaintiff is entitled to nominal, compensatory and punitive damages, as well as equitable relief against all defendants in their official and individual capacities, for the past violations of Plaintiff's constitutional rights and the injury and damages caused by their wrongful actions.

22. Venue is proper pursuant to 28 USC § 1391 because all acts and omissions alleged herein occurred within this judicial district.

## Factual Background

23. Plaintiff incorporates by reference paragraphs 1-22 as if set forth fully herein.

24. On June 29, 2019, Plaintiff was involved in an assaultive confrontation with another individual and was beaten with a metal rod about his body including his right lower extremity ("RLE"), including significant blows to the calf and surrounding areas. Plaintiff was arrested by the Dearborn Police and incarcerated in their jail.

25. On June 30, 2019 at approximately 08:24, Plaintiff, after Plaintiff had been making regular complaints of severe pain to the RLE, rectal bleeding, stomach pain, and generalized pain throughout his body, Plaintiff was transferred to the emergency room at Oakwood Hospital and Medical Center a/k/a Beaumont Hospital, Dearborn, by the Dearborn Police.

26. The history at triage included Plaintiff was in police custody, had been assaulted with a baton the day before and struck several times about his body, he was in significant pain, including his RLE, and had bright red rectal bleeding since the assault.

27. Plaintiff was evaluated by Beaumont medical personnel, including physicians, and ultimately discharged to the care of the Dearborn Police.

28. On July 1, Plaintiff's attorney noticed his RLE was swollen and family members noticed he was limping and dragging his right leg. Plaintiff expressed he was in significant pain.

29. On July 1, at approximately 18:25, Plaintiff was transferred by Dearborn Police to the Jail.

30. The "Receiving Screening" completed by Defendant Meadows, RN, indicated Plaintiff was in pain, rated at 6/10. Plaintiff also exhibited obvious signs and symptoms of significant RLE injury warranting immediate evaluation by a physician, including not being able to bear weight on the RLE. Plaintiff was assigned a "bottom bunk" and placed in "General Population." Defendant Meadows disregarded Plaintiff's need for immediate physician evaluation and, consequently, did not seek a physician consult, contact a physician nor did she recommend hospitalization or, if she did, these recommendations were ignored.   Stated otherwise, Nurse Meadow's response to Plaintiff's medical needs was objectively unreasonable and deliberately indifferent.

31. After the initial evaluation, Plaintiff made regular and repeated complaints of worsening pain, tingling, swelling and coldness about the RLE. For example, and without limitation, at 08:57 on July 2, Plaintiff was assessed by Defendant Graham, RN. Plaintiff complained of severe right foot pain and advised he was seen previously in a hospital, but an x-ray was not taken of the RLE. Defendant Graham's assessment was "alteration physical status." Defendant Graham disregarded Plaintiff's need for immediate physician evaluation and, consequently, did not seek a physician consult, contact a physician nor did she recommend hospitalization or,

if she did, these recommendations were ignored.  Stated otherwise, Defendant Graham's response to Plaintiff's medical needs was objectively unreasonable and deliberately indifferent.

32. Consistently, and including in between physical evaluations by multiple medical personnel, Plaintiff made regular complaints to Defendant Deputies, and each of them, regarding his inability to ambulate, increasing pain, increased swelling, discoloration, and similar complaints indicating a severe problem with the RLE. Additionally, Defendant Deputies, and each of them, witnessed Plaintiff's steadily worsening condition including, without limitation, his inability to walk, navigate stairs (Plaintiff was forced to slide down and crawl up stairs), his falls, including while showering, and Defendant Deputies, and each of them, heard Plaintiff's repeated pleas for assistance and complaints of worsening pain, swelling, tingling, etc. Notwithstanding, Defendant Deputies, and each of them, dismissed and otherwise ignored the objective manifestations of Plaintiff's worsening condition. Stated otherwise, Defendant Deputies' response (individually or collectively) to Plaintiff's medical needs was objectively unreasonable and deliberately indifferent.

33. On July 2 Plaintiff was visited by family members. Plaintiff advised them he was in intense pain and could not walk.

34. Throughout the day of July 2, Plaintiff  repeatedly requested Defendant Deputies, and each of them, to allow him to see a doctor, be transferred to a hospital

or to get other appropriate medical care; notwithstanding, Defendant Deputies, and each of them, ignored and were deliberately indifferent to these requests and Plaintiff's worsening physical and mental condition. Stated otherwise, Defendant Deputies' response (individually or collectively) to Plaintiff's medical needs was objectively unreasonable and deliberately indifferent.

35. On July 2 Defendant Patsalis, without conducting a physical assessment, ordered an x-ray of the right tibia and fibula based upon a history of "Pain Injury." The x-ray was not ordered stat; instead, it was one the next day. Notwithstanding, had Defendant Patsalis actually conducted a physical assessment, he would have discovered signs and symptoms of an advancing vascular compromise and resulting compartment syndrome to the RLE and realized that an x-ray would not detect it and that transfer to a hospital was indicated so that a CTA (Computed Topography Angiogram) could be performed. Stated otherwise, Defendant Dr. Patsalis' response to Plaintiff's medical needs was objectively unreasonable and deliberately indifferent.

36. Plaintiff continued to complain throughout the day of July 2 of worsening pain, tingling and cold RLE. These complaints were made to Defendant Deputies but were ignored. Stated otherwise, Defendant Deputies' response (individually or collectively) to Plaintiff's medical needs was objectively unreasonable and deliberately indifferent.

37. At some time just prior to 23:21 on July 2, Defendant Deputies, or some of them, discovered Plaintiff had fallen in the shower because unable to bear weight on his RLE. Notwithstanding, Plaintiff's obviously worsening condition, his inability to stand, him falling, etc., Defendant Deputies, or some of them, ignored Plaintiff's worsening condition and need for immediate medical evaluation in a hospital setting. Stated otherwise, Defendant Deputies' response (individually or collectively) to Plaintiff's medical needs was objectively unreasonable and deliberately indifferent.

38. Defendant Wilson, LPN was advised Plaintiff fell because Plaintiff could not bear weight on his RLE. Notwithstanding, Defendant Wilson did not do an assessment, obtain a physician consult, or recommend hospitalization. Instead, Defendant Wilson advised Plaintiff no medical attention would be given because an x-ray had been scheduled for the next day, July 3. Defendant Wilson merely advised Plaintiff to "stay off foot unnecessarily."  Defendant Wilson knew, or reasonably should have known, that "staying off the foot" would be virtually impossible in a jail setting in that, among other things, the deputies in charge of Plaintiff would not allow him to stay off the RLE. Furthermore, Defendant Wilson did not seek a physician consult, did not contact a physician, nor did she recommend hospitalization or, if she did, these recommendations were deliberately ignored. Stated otherwise, Nurse Wilson's response to Plaintiff's medical needs was objectively unreasonable and deliberately indifferent.

39. Throughout the early morning hours of July 3, Plaintiff continued to make complaints of increasing pain, limitation of function, swelling and related RLE problems to Defendant Deputies, or some of them, but these complaints and obvious symptoms of advancing compartment syndrome were ignored; consequently, Plaintiff's condition continued to worsen. Stated otherwise, Defendant Deputies' response (individually or collectively) to Plaintiff's medical needs throughout the day, July 3 was objectively unreasonable and deliberately indifferent.

40. On July 3 at approximately 08:45, Plaintiff was taken for an in-jail x-ray. Plaintiff was unable to bear any weight and required a wheelchair for transport. The x-ray was transmitted electronically to Steven M. Lewin, DO, PICS-and-PACS, Inc. and was interpreted as "normal right tibia/fibula. Obtain follow-up if signs and symptoms persist." Thus, the x-ray was of zero diagnostic value.

41. Throughout the remainder of the day July 3, Plaintiff continued to make complaints of severe, worsening RLE pain and numbness and the RLE was, as would be apparent to any ordinary person, swollen and discolored. Plaintiff's complaints and obvious physical symptoms were ignored by all defendants.  Stated otherwise, Defendants' response (individually or collectively) to Plaintiff's medical needs was objectively unreasonable and deliberately indifferent.

42. On July 4, 2019, Plaintiff met with his attorney and his condition was obviously critical; Plaintiff was by this time unable to walk and he required a wheelchair.

43. Among other things, Plaintiff was taunted by Defendant Deputies, or some of them, regarding his inability to walk properly and difficulty using the stairs stating, without limitation: "You're a criminal, you can figure out how to get up and down the stairs."

44. On July 4 Defendant Inez Diggs, MA-LNA charted that "the right foot is black and blue and needs attention." Notwithstanding these obvious critical findings, Defendant Diggs did not seek a physician consult, did not contact a physician nor did she recommend hospitalization or, if she did, this recommendation was ignored. Stated otherwise, Defendant Diggs' response to Plaintiff's medical needs was objectively unreasonable and deliberately indifferent.

45. On July 5 Plaintiff continued to make complaints like those stated above and his physical condition continued to spiral downwards.

46. On July 5 Plaintiff was finally evaluated by Defendant Dr. Patsalis whose history included (caps in original): "PATIENT INVOLVED IN AN ALTERCATION AND WAS HIT WITH A WAND ON THE HEAD AND LE. PATIENT SUSTAINED AN INJURY TO RLE. X-RAY NEGATIVE FOR FX. PATIENT C/O PAIN." Defendant Dr. Patsalis found a "RLE contusion above ankle

and mid-shin swollen, hard tender calf" and his assessment was (caps in original):

"MULTIPLE INJURIES SWOLLEN TENDER CALF R/O DVT TRANSFER TO

ED."

47. Plaintiff was then transferred to Detroit Receiving Hospital, arriving at

approximately 15:54, where studies established the right leg had edematous

musculature and obliteration of facial plains with soft tissue swelling extending from

the knee to the foot, suggestive of myonecrosis and compartment syndrome.

48. Plaintiff was immediately taken to surgery during which it was found that the

muscles on the medial side of the RLE were non-viable, had no movement, and were

auto-necrosing. Similar findings were made for the anterior and lateral

compartments. Initially, a below knee amputation was performed; however, the leg

continued to deteriorate and an above the knee amputation was necessary done.

## COUNT I

## VIOLATION OF RIGHTS SECURED BY THE FOURTH, EIGHTH AND FOURTEENTH AMENDMENTS

49. Plaintiff incorporates by reference paragraphs 1-48 as if set forth fully herein.

50. For all times relevant hereto, Defendants, and each of them, were acting under

color of statue, ordinance, regulations and/or customs of the State of Michigan,

Defendant Wayne County and/or Defendant Wellpath and subjected Plaintiff to a

deprivation of his rights, privileges and immunities secured by the constitutions and law of the United States and the State of Michigan.

51. For example, and without limitation, Defendants, and each of them, knew Plaintiff had been the victim of an assault, had been beaten about his body, and more particular his RLE, that his physical condition was steadily declining and the signs and symptoms of compartment syndrome (e.g. swelling, stiffness, discoloration, cold to touch, tingling, etc.) were progressing and worsening and otherwise required immediate medical attention.

52. Pursuant to 42 USC § 1983, as well as the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, Defendants, and each of them, had a duty to act prudently and with reasonable care, and otherwise to avoid cruel and unusual punishment.

53. Under the Fourth Amendment, Defendants, and each of them, had a duty to provide Plaintiff with adequate medical treatment; Defendants' conduct, collectively and/or individually, violated and otherwise deprived Plaintiff of his  rights secured by the Fourth Amendment because their medical treatment decisions, or failure/refusal to provide same, was reckless and objectively unreasonable because, among other things, and without limitation:

   a. Defendants, and each of them, had notice of Plaintiff's serious medical needs;

15

b.  Defendants, and each of them, recognized the seriousness of Plaintiff's medical needs;

c.  the scope of the requested and required treatment was reasonable, e.g., transfer to a hospital for a CTA; and

d.  there were no police interests, including administrative, penological or investigative concerns which outweighed Plaintiff's need for prompt medical care.

54. Under the Eighth and Fourteenth Amendments, Defendants, and each of them, had a duty to not be deliberately indifferent to Plaintiff's serious medical needs.

55. Defendants' conduct, collectively and/or individually, violated and otherwise deprived Plaintiff of his  rights secured by the Eighth and Fourteenth Amendments because their medical treatment decisions, or failure/refusal to provide same, was deliberately indifferent to his serious medical needs and resulted in and constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

56. Among other things, Plaintiff's medical condition upon arrival and as it steadily worsened, was so obvious that even a lay person would easily have recognized Plaintiff's need for medical treatment at a hospital.

57. Defendants' response to Plaintiff's obvious need for medical care and transfer to a hospital for diagnostic work up  was so inadequate as to amount to no treatment at all.

58. The conduct of Defendants, and each of them, all within the scope of their employment and authority, exhibited a deliberate indifference to Plaintiff's medical needs, in violation of Plaintiff's civil rights, and thereby imposed a cruel and unusual punishment upon him in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments in the following ways, by way of example:

   a. Failing to adequately screen and classify Plaintiff;

   b. failing to do a proper assessment upon admission to the jail;

   c. failing to recognize the advancing compartment syndrome and understanding if not treated, would likely result in the loss of the RLE and, if left untreated long enough, loss of the RLE above the knee;

   d. disregarding Plaintiff's repeated pleas for help, forcing him to slide down and climb up stairs, shower unassisted, and otherwise not accommodating him and his worsening medical condition;

   e. taunting him about his inability to walk or otherwise function normally;

f.   failing to conduct regular checks and evaluations of Plaintiff so
     to determine his condition and recognize that it was worsening;

g.   failing to provide appropriate and reasonable medical care and
     promptly transfer Plaintiff out of the jail to a hospital for a
     complete assessment including a CTA;

h.   failing to provide adequately trained deputies, correction officers
     and medical personnel for the detection of advancing and
     worsening medical conditions including compartment syndrome
     when same should be suspected and assessed for in the case, like
     Plaintiff, a physical assault with a baton on the RLE;

i.   failing to screen deputies, correction officers and medical
     personnel to determine their level of competency and
     performance, both before and after being engaged;

j.   failing to monitor, train, discipline and control deputies,
     correction officers and medical personnel after derelictions in
     their performance should have become known;

k.   failing to refrain from intentionally denying or delaying access
     to appropriate medical care;

l.   acting with deliberate indifference towards Plaintiff and his
     worsening medical condition, complaints of same and inability

to function normally and otherwise disregarding the obvious violation of Plaintiff's constitutional rights; and

m. Any other breaches, acts of deliberate indifference and/or omissions of deliberate indifference which become known through the course of discovery.

59. In addition or in the alternative to the foregoing, Defendants, and each of them, but more particularly, Defendants Wayne County, Sheriff Washington, and Wellpath had a duty to use reasonable care in the formulation of its policies and procedures relative to providing prompt and immediate medical treatment to its detainees, including Plaintiff, as well as to train, test, evaluate, review and update its deputies, corrections officers and medical personnel, including those pursuant to contract with a private entity like Defendant Wellpath, in the recognition, assessment and treatment of critical medical emergencies and to otherwise act reasonable and in conformance with the laws of the United States and the State of Michigan relative to providing prisoners, including Plaintiff, with necessary medical care.

60. The multitude of failures in providing reasonable and prompt care for an obvious serious medical need as describe herein are the result of constitutionally inadequate training on the part of Defendants Wayne County, Sheriff Washington, and Wellpath, individually and collectively, and including those individual Defendants named herein.

61. As a direct, proximate and foreseeable result of the wrongful acts and/or omissions, including the deliberate indifference of Defendants, and each of them, and consequent violation of Plaintiff's civil rights as described above, and as a direct, proximate and foreseeable result, Plaintiff has and will continue to suffer damages in the future, including, but not limited to:

    a.  loss of his RLE above the knee and related physical injuries, scarring, and disfigurement;

    b.  medical, hospital and other treatment expenses;

    c.  pain and suffering;

    d.  mental anguish;

    e.  humiliation, embarrassment and/or mortification;

    f.  economic damages including, but not limited to, loss of income and earning capacity.

    g.  all other damages identified through the course of discovery and otherwise available to remedy the constitutional violations perpetrated by Defendants, and each of them, upon Plaintiff.

62. The wrongful acts and/or omissions of Defendants, and each of them, amount to a deprivation of Plaintiff's rights, privileges, or immunities secured by the Constitution and laws of the State of Michigan, in violation of 42 USC § 1983.

63. The acts and/or omissions of Defendants, and each of them were done with deliberate indifference and/or with an intent to cause Plaintiff physical harm and mental suffering. Consequently, in addition to compensatory damages as requested herein, Plaintiff is entitled to punitive damages and award of attorney fees pursuant to 42 USC § 1988.

WHEREFORE, Plaintiff requests this Honorable Court make and enter a judgment in his favor, and against Defendants, and each of them, for compensatory and punitive damages. Furthermore, Plaintiff requests this Court enter a declaratory judgment that Defendants' violated his rights under the Eighth and Fourteenth Amendments to the US Constitution; and Plaintiff further requests an award of attorney fees and costs pursuant to 42 USC Section 1988. Plaintiff further requests this Court award any and all other damages, equitable or otherwise, to which Plaintiff is found to be entitled.

Respectfully submitted,

By:  */s/ Paul F. Doherty*
**PAUL F. DOHERTY (P36579)**
**VEN R. JOHNSON (P39219)**
**JOHNSON LAW, PLC**
Attorneys for Plaintiffs
535 Griswold St., Ste. 2600
Detroit, MI 48226
pdoherty@venjohnsonlaw.com
vjohnson@venjohnsonlaw.com

Dated: January 26, 2021

21

## JURY DEMAND

NOW COMES Plaintiff, NICHOLAS GAROUFALIS, through counsel, JOHNSON LAW, PLC, respectfully requesting a trial by jury.


Respectfully submitted,

**JOHNSON LAW, PLC**

*/s/ Ven R. Johnson*
**VEN R. JOHNSON (P39219)**
**MATTHEW NDONWI (P82601)**
Attorneys for Plaintiff
535 Griswold St., Suite 2632
Detroit, MI 48226
(313) 324-8300
vjohnson@venjohnsonlaw.com
mndonwi@venjohnsonlaw.com

Dated: January 26, 2021